(Cuyahoga County Court of Common Pleas.)

## C. J. CHAFFEE v. LUCY FISH ET AL.

*When a fence built by a lessee is not a fixture.*

A leased to B some unoccupied sidehill for a stock yard, which B enclosed by a light temporary fence, which, by the terms of the lease, was to be taken down and removed when it had served its purpose. Subsequently, a second lease of the same land was made by the same parties, which did not mention the right of the lessee to remove the fence.

*Held:* That although the posts were imbedded in the earth, that did not constitute that *permanent* relation to the soil which would make the fence a fixture placed there for *permanent* use. The *purposes* for which the annexation is made are to be considered.

(Decided October Term, 1894.)

HUTCHINS, J.

This case presents some very interesting questions. It seems that on the third day of March, 1888, the plaintiff secured a lease of certain premises belonging to defendants in this case, for the purpose of storing or keeping cattle and horses, which plaintiff brought to the city for sale, and for the establishment of what is called a sale yard. By the terms of the lease —the land being uninclosed and unfit until inclosed for the purpose for which it was designed—there was provision made that the lessee might put up fences upon these premises for the purpose of making an inclosure to keep his stock from getting out, and at the expiration of the lease he was to be permitted to remove these fences constructed for this purpose. The lease also provides that it may be extended from time to time on the option of the parties by the payment of an additional rate of rent.

Subsequently it seems that another lease was made. This would seem to indicate that the old lease had been entirely abrogated, and the parties to it had abandoned their rights under it and were standing upon a different lease. In the second lease there is no provision made for permitting the lessee to remove fences. It is a rough drawn lease in the nature of a memorandum or contract. It is signed by Chaffee and one of the heirs of this estate, and it is claimed that it made new conditions, and that all the rights which flowed from the original lease, as to the fences, had ceased, and that the parties relied upon another lease which did not contain that provision. There is considerable controversy as to whether or not Chaffee

was in possession at the time the fences were taken down, and whether he paid rent up to the spring of 1893. It is charged in the petition that a portion of this fence was taken away by defendants, and that in the act of removing the entire fence the plaintiff came upon the scene, and stopped the further removal.

From the view I take of this case it makes little difference whether Chaffee had paid his rent in advance or not. The fences were the well known wire and slat arrangement which can be rolled and unrolled like a map, and they are attached to small posts driven into the ground. They are temporary in their character, but serve the purpose for which they are designed. The law of fixtures controls this case.

The law of fixtures has given rise to a vast amount of litigation and controversy. It has always been a difficult problem to define fixtures, and the result of years of definitions and experiences, is, that in substance, a fixture is such according to the circumstances of each particular case. What might be considered a fixture in one case, would not be considered a fixture under other circumstances, and in a different case. It is a shifting definition and is to be controlled largely by the circumstances of each individual case. I refer to 1 Ohio St. page 511, *Teaff* v. *Hewitt*. The syllabus reads as follows: "A fixture is an article which was a chattel, but which, by being affixed to the realty, became accessory to it, and parcel of it. The true criterion of a fixture is the united application of the following requisites, to-wit: '(1). Actual annexation to the realty, or something appurtenant thereto; (2). Application to the use or purpose to which that part of the realty with which it is connected is appropriated; (3). The intention of the party making the annexation to make a permanent accession to the freehold.'"

Now, it seems to me that is one of the most rational, most comprehensible and most satisfactory definitions of a fixture I have been able to find, and I have examined the leading authorities on fixtures with a great deal of care in this connection. I am satisfied with the rule laid down in the 1st Ohio St. This rule is approved in the case of *Wagner* v. *Cleveland & Toledo Railroad Co.*, 22 Ohio St. 563, which indicates that you have to take into account the purposes in the minds of the parties, at the time the structure is erected. The syllabus in the case in the 22d Ohio St. is as follows: "1. Stone piers built by a railroad company as part of its railroad, on lands over which it has acquired the right of way for its road, do not, though firmly imbedded. in the earth, become the property of the owner of the lands as part of the realty. And, on the purpose of completing the railroad being abandoned, the company may remove such structures as personal property." "2. This pier was there for a certain purpose. If it had been a house built with stone in the ground that way, that would have become a permanent part. of the realty, it would not have been considered a fixture in the sense of being personal property. Justice WHITE makes the distinction in the case in the 22d Ohio St. already referred to, when he says: "In order to determine in a given case, whether a chattel, by annexation, has been incorporated into the realty so as to become a part of it, the purpose for which the annexation was made must be considered, as well as the relation of the parties concerned to the property, both before and after the annexation." This is the law on the subject, in a nutshell.

Now let us go back to our case. We find that this land was unoccupied, side hill land, leased for a stockyard or a sale yard for stock, and inclosed by the plaintiff with a light temporary fence, which, by the terms of the original lease, was to be taken away by Chaffee when it had served its purpose, thus clearly indicating the purpose and intention not only of the lessee, for which those fences were to be there,

to-wit, temporary use for keeping stock and using the land as a stock yard or sale yard as indicated in the original lea e, by the insertion of that clause in the original lease. It was understood by the parties that although that fence might have been attached to the realty as a railroad bridge is imbedded by the stones in the earth, yet it was not intended that that should become a permanent part of the realty; it was only for the purposes for which it was indicated and placed there. I am perfectly satisfied that although the second lease does not mention the right of the lessee to take away these fences, that it was clearly understood from the beginning to the end, and agreed between the parties that these fences were not to become part of the realty. That original understanding of the intention and purposes must prevail. Although the posts were imbedded in the earth, and the fence attached to these posts, yet that did not constitute that permanent relation to the soil which would carry the property with the soil as would be the case with a building or anything that was placed there for a permanent purpose. The plaintiff put these fences there and paid for them; the defendants didn't pay for them, and knowing the purpose for which they were put there, it was a gross violation on their part of plaintiff's rights to take them away.

Having come to this conclusion, it is not necessary to pass upon the question whether plaintiff was in actual possession or not.

I find from the proof there were removed by defendants seventy-five rods of fence at eighty cents a rod, making $60.00; one hundred and twenty-five posts at twelve cents a-post, making $15.00; four gates, $2.50 a piece, making $10.00; total $85.00. I would give the plaintiff $85.00, if I could, but as he has sued for only $80.00, that will be the limit of the finding. The finding is in favor of the plaintiff for $80.00, with interest up to the first day of this term of court.

*W. H. Higby*, for plaintiff.

*Heisely & Selzer*, for defendant.